UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

JOE BETTENCOURT BORGES and
MARIA ROCHA BORGES,

    Debtors.

No. 10-12800-s11

**MEMORANDUM OPINION IN SUPPORT OF
(A) ORDER SETTING ASIDE ORDER TO SHOW CAUSE WHY CASE SHOULD NOT
BE DISMISSED FOR FAILURE TO COMPLY WITH CREDIT COUNSELING
REQUIREMENT AS TO JOE BETTENCOURT BORGES AND GRANTING DEBTORS'
MOTION FOR WAIVER OF CREDIT COUNSELING REQUIREMENT PURSUANT TO
11 U.S.C. § 109(h)(4) FOR JOE BETTENCOURT BORGES
-and-
(B) ORDER DISMISSING CHAPTER 11 CASE ONLY AS TO MARIA ROCHA
BORGES FOR FAILURE TO OBTAIN BUDGET AND CREDIT COUNSELING PRIOR
TO THE DATE OF FILING OF PETITION AND DENYING DEBTORS' MOTION TO
PERMIT A SHOWING OF REASONABLE JUSTIFICATION PURSUANT TO 11
U.S.C. 1112(b)(2)(B) FOR MARIA BORGES**

**I.  Preliminary Statement**

This matter came before the Court on June 28, 2010 for a
hearing on the Court's Order to Show Cause Why Case Should Not
Be Dismissed for Failure to Comply with Credit Counseling
Requirements entered on June 3, 2010.  Doc 11.  Joe Bettencourt
Borges and Maria Rocha Borges ("Debtors"), through counsel,
filed Debtors' Response to the Court's Order to Show Cause and
Motion for Waiver of Credit Counseling Requirement Pursuant to
11 U.S.C. § 109(h)(4) for Joe Borges and Permit [sic] a Showing
of Reasonable Justification Pursuant to 11 U.S.C. §
1112(b)(2)(B) for Maria Borges ("Response") on June 24, 2010.
Doc 25.  At the hearing, the Court agreed to hold the Order to

1

Show cause in abeyance as to Ms. Borges. It set aside the Order as to Mr. Borges upon the submission of an affidavit establishing incapacity under § 109(h)(4). Following the hearing and in support of their Response, Debtors filed the Affidavit of Maria Rocha Borges on July 1, 2010 (doc 29) and Debtors' Brief/Memorandum on July 2, 2010. Doc 31. For the reasons stated below, the Court will dismiss the joint chapter 11 bankruptcy case as to Maria Rocha Borges only.

## II. Background

Debtors filed their individual Chapter 11 voluntary petition on June 1, 2010. Doc 1. On their petition, Debtors stated that they had completed, signed, and attached Exhibit D - Individual Debtor's Statement of Compliance with Credit Counseling Requirement to the petition. They had not.[1] In consequence, the Court issued its Order to Show Cause because Debtors had not filed Exhibit D, nor a certificate of completion of credit counseling, nor a motion pursuant to 11 U.S.C. § 109(h)(3) or (4) with the petition. On June 7, 2010, Debtors

---

[1] Nowhere in Debtors' responses to the Court's Order to Show Cause does Debtors' Texas counsel (as distinguished from local counsel, who was first contacted after these events occurred) explain how or why Texas counsel signed and filed the petition without Exhibit D attached, contrary to Debtors' sworn statements in the petition. On June 4, 2010, Debtors submitted an amended petition in which Debtors again stated they had attached Exhibit D, but again had not done so. Doc 12. Texas counsel also signed the amended petition.

2

filed a Certificate of Counseling (doc 16) certifying that they each received credit counseling from an approved agency on June 4, 2010, three days after the date of the filing of the petition. In their Response, Debtors recognize that they were required to obtain credit counseling from an approved agency prior to filing their petition, but contend that circumstances prevented them from complying with the credit counseling requirement.

Debtors met with counsel on May 28, 2010 to commence the bankruptcy process in advance of a June 3 state court hearing they feared might result in the loss of both their dairy farm and the proceeds from the sale of their dairy herd. Thus the need for a filing was urgent.

Mr. Borges' comprehension was and is limited due to the lasting effects of a stroke that occurred approximately three years earlier. Mr. Borges' ability to engage in conversation and other events is further limited by mild dementia. Mr. Borges also suffers from and receives treatment for manic depression, which so affects his capacity to comprehend and act that he was excused from attending hearings in Debtors' 1996 bankruptcy. Finally, Mr. Borges experienced a diabetic shock on May 25, 2010, necessitating emergency medical treatment. In light of Mr. Borges' difficulties with comprehension, Ms. Borges believed it was necessary for Debtors to complete credit

3

counseling together so she could assist her husband. When Mr.
Borges' condition had sufficiently improved from the shock, both
debtors obtained the credit counseling. Other than a crowded
schedule arising from among other things running the dairy and
caring for Mr. Borges, including administering his medications,
nothing prevented Ms. Borges from taking the credit counseling
for herself. Further, nothing prevents Ms. Borges from filing
another petition for herself and perhaps having her case jointly
administered or substantively consolidated with that of Mr.
Borges. <u>See</u> F.R.B.P. 1015(b).

Ms. Borges' affidavit establishes facts sufficient to find
incapacity under § 109(h)(4) for Mr. Borges. Specifically, the
Court concludes that "the debtor is impaired by reason of mental
illness or mental deficiency so that he is incapable of
realizing and making rational decisions with respect to his
financial responsibilities", pursuant to § 109(h)(4). The Court
will set aside the Order to Show Cause as to Mr. Borges, so the
issue before the Court is limited to Ms. Borges' compliance with
§ 109(h)(1).

**III. Issue Before the Court**

As to Ms. Borges, Debtors contend in their Response that
their urgent need to file the petition coupled with Mr. Borges'
incapacity provides a reasonable justification under §

4

1112(b)(2)(B)[2] for her failure to timely obtain credit counseling. Debtors urge the Court to hold that dismissal for noncompliance with § 109(h) is not mandatory in chapter 11 cases because § 1112(b) provides a court with "statutory flexibility to reach a different result." See Memorandum ¶ 7. Debtors ask the Court to apply § 1112(b)(2)(B) as an additional exception to § 109(h)(1) to justify a retroactive deferral of Ms. Borges' credit counseling for seven days[3] from the date of the filing of the petition. These facts appear to present an issue of first

---

[2]Section 1112(b) provides in relevant part:

(2) The relief provided in paragraph (1) shall not [sic] be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that—

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

[3]In paragraph 8 of their Response, Debtors state that granting a seven day deferral would enable the credit counseling for Ms. Borges to be considered timely under §§ 109(h), 521, and 1112(b). Doc 25.

impression regarding the interplay between § 109(h) and §
1112(b).

## IV. Discussion

To be a debtor, an individual must comply with the credit
counseling requirement set forth in § 109(h).  Section 109(h)(1)
provides:

> Subject to paragraphs (2) and (3), and notwithstanding
> any other provision of this section, an individual may
> not be a debtor under this title unless such
> individual has, during the 180-day period preceding
> the date of filing of the petition by such individual,
> received from an approved nonprofit budget and credit
> counseling agency described in section 111(a) an
> individual or group briefing (including a briefing
> conducted by phone or on the Internet) that outlined
> the opportunities for available credit counseling and
> assisted such individual in performing a related
> budget analysis.

This requirement was added to the Bankruptcy Code ("Code") in
2005 as part of the Bankruptcy Abuse Prevention and Consumer
Protection Act ("BAPCPA") amendments.  Pub. L. 109-8, 119 Stat.
23 (2005).  Specific exceptions to the credit counseling
requirement are set forth in §§ 109(h)(2), 109(h)(3), and
109(h)(4).  First, an debtor need not comply with § 109(h)(1) if
he or she "resides in a district for which the United States
trustee. . .determines that the approved nonprofit budget and
credit counseling agencies for such district are not reasonably
able to provide adequate services to the additional individuals
who would otherwise seek credit counseling. . ." § 109(h)(2)(A).

6

Second, and subject to § 109(h)(3)(B), a debtor need not comply

with § 109(h)(1) if he or she submits a certification that:

> (i) describes exigent circumstances that merit a waiver of the requirements of paragraph (1); (ii) states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 7-day period beginning on the date on which the debtor made that request; and (iii) is satisfactory to the court."

§ 109(h)(3)(A).[4]  Third, the credit counseling requirement is

waived for a debtor "whom the court determines, after notice and

hearing, is unable to complete those requirements because of

incapacity, disability, or active military duty in a military

combat zone." § 109(h)(4).[5]

Although the statute is silent regarding the consequences

for a debtor who fails to obtain prepetition credit counseling

---

[4]The § 109(h)(3)(A) exemption is only temporary:

> "With respect to a debtor, an exemption under subparagraph (A) shall cease to apply to that debtor on the date on which the debtor meets the requirements of paragraph (1), but in no case may the exemption apply to that debtor after the date that is 30 days after the debtor files a petition, except that the court, for cause, may order an additional 15 days."

§ 109(3)(B).

[5]Under § 109(h)(4), the court can making a finding of incapacity when "the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities" and make a finding of disability when "the debtor is so physically impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing required under paragraph (1)."

7

or qualify for an exception, the majority of courts have held that mandatory dismissal is the appropriate remedy, even though it can yield a harsh result. See In re Crawford, 420 B.R. 833, 838-39 (Bankr. D.N.M. 2009); see also In re Seaman, 340 B.R. 698, 706 (Bankr. E.D.N.Y 2006) (citing thirty-one decisions beginning in 2005 in which courts held that ineligibility for failure to comply with § 109(h) requires dismissal). But see In re Carey 341 B.R. 798, 804 (Bankr. M.D. Fla. 2006) (striking the debtor's chapter 7 petition because a case cannot be commenced absent compliance with § 109(h) so there is no case to be dismissed); In re Hess 347 B.R. 489, 498 (Bankr. D. Vt. 2006) (holding that the court has discretion to excuse noncompliance with § 109(h) to avoid "manifest injustice").

Courts that hold dismissal is mandatory find support in the plain language of the statute, the context of the Code as a whole, and legislative history. See Crawford, 420 B.R. at 839. First, the plain language of the statute explicitly conditions eligibility to be a debtor upon receipt of approved prepetition credit counseling and clearly specifies limited exceptions to that requirement. Id. Because the requirements for compliance with § 109(h)(1) are "plain and mandatory," bankruptcy courts are left with no discretion to conduct further inquiry regarding a debtor's eligibility. Hedquist v. Fokkena, 342 B.R. 295, 300 (B.A.P. 8th Cir. 2006). Second, since noncompliance renders an

8

individual ineligible to be a debtor, dismissal is the appropriate remedy to give effect to § 109(h) because § 109(h) is non-jurisdictional and dismissal is the usual remedy provided to courts by the Code to terminate bankruptcy cases. Crawford, 420 B.R. at 840 n.13. Third, Congress added § 109(h) to protect creditors by imposing an additional eligibility standard to act as a barrier to relief and to protect debtors by requiring that they inform themselves of the consequences of bankruptcy prior to filing. Id. at 840 (citing legislative history). A rigid application of the credit counseling requirement is thereby consistent with the intent to create a carefully delineated barrier to entry that protects both debtors and creditors. See id. Therefore, when an individual neither complies with the credit counseling requirement nor qualifies for a temporary exemption or waiver, the Court is left with no discretion[6] not to dismiss a bankruptcy case because the individual has not taken the requisite steps to become a debtor. Nonetheless, the Debtor argues that the conclusion that the Court lacks discretion not to dismiss a bankruptcy for noncompliance with the terms of § 109(h) should not apply in chapter 11 bankruptcies.

The issue of noncompliance with § 109(h) as grounds for

---

[6]  Other than, perhaps, finding manifest injustice in the particular circumstances of the case. Debtors have not asked for such a ruling, nor would one be justified in these circumstances.

9

mandatory dismissal of a bankruptcy case has not been considered specifically in the chapter 11 context in this District.  <u>See</u> <u>Crawford</u>, 420 B.R. at 839 (holding that noncompliance with 109(h) mandated dismissal of debtor's chapter 7 bankruptcy). Only one court has considered the issue to date and held that dismissal for noncompliance with § 109(h) is equally compulsory in a chapter 11 case.  <u>See</u> <u>Hedquist</u>, 342 B.R. at 300-01.  In affirming the <u>Hedquist</u> trial court's *sua sponte* dismissal of debtor's chapter 11 case for noncompliance with § 109(h), the Eighth Circuit Bankruptcy Appellate Panel recognized that "individuals seeking relief under *any* chapter of the Bankruptcy Code must still comply with the applicable rules and requirements in order to be eligible for that relief."  <u>Id.</u> at 299 (emphasis in original).  This is consistent with the plain language of the statute which indicates that "[s]ubject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor *under this title* unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency. . ." § 109(h)(1) (emphasis added).  In <u>Hedquist</u>, the chapter 11 debtors attached an affidavit to their petition indicating that they did not obtain credit counseling because negotiations to prevent foreclosure proved unsuccessful and

10

necessitated that they file a petition on the day of the foreclosure sale.  Id.  The debtors did not declare in their affidavit that they had requested but were unable to obtain prepetition credit counseling within five days (now seven days).  Id.  The court reiterated its prior holding that a foreclosure sale does not constitute exigent circumstances when debtors have notice of an impending foreclosure.  Id. at 298. Lack of exigent circumstances notwithstanding, the court further held that the debtors were not entitled to a thirty day extension because their affidavit did not establish that they had requested but could not obtain credit counseling.  Id.

Here, Debtors propose that this Court reach a different result.  Unlike in Hedquist where debtor's compliance with the terms of § 109(h) alone determined the outcome, Debtors request that the Court treat § 1112(b)(2)(B) as an exception to § 109(h)(1) based on the differences in both cost and purpose of chapter 7 liquidations and chapter 11 reorganizations as well as the role of § 1112(b) in furthering the goals of chapter 11. This the Court cannot do.

**A. The court cannot apply § 1112(b) as an additional exception to § 109(h)(1) when Congress provided precise exceptions within § 109(h).**

Section 109(h) makes no reference to § 1112(b).[7]  When

_____

[7]Compare, e.g., § 552(b)(1) (explicitly incorporating §§ 363, 506(c), 522, 544, 546, and 548 as exceptions to the general

11

statutory language is plain, it is dispositive of congressional intent and must be enforced according to its terms. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989). There is simply no language in § 109(h) that permits the Court to treat § 1112(b)(2)(B) as an exception.

Relying on canons of statutory construction, under the maxim *expressio unius est exclusio alterius*, Congress' provision of exceptions in a statute demands the inference that all other things not mentioned are excluded. United States v. Johnson, 529 U.S. 53, 58 (2000). This maxim requires a court to presume that Congress acts intentionally when it sets forth specific exceptions in a statute such that additional exceptions may not be implied in the absence of clear legislative intent to the contrary. Id. In § 109(h)(1), Congress specified that ineligibility due to an individual's failure to obtain prepetition credit counseling is "[s]ubject to [109(h)] (2) and [109(h)](3), and notwithstanding any other provisions of this section..." In § 109(h)(4), Congress made another clear exception to the prepetition credit counseling requirement by providing that it "shall not apply" to debtors who establish

---

rule permitting prepetition security agreements to reach postpetition proceeds and earnings) and § 11 U.S.C. 365(a) (explicitly incorporating §§ 765 and 766 as exceptions to the general rule that the trustee may assume or reject any executory contract or unexpired lease of the debtor).

12

incapacity, disability or active military service in a combat zone.  The provision of exceptions to the prepetition credit counseling requirement shows that Congress contemplated exceptions to the counseling requirement and made those exceptions explicit.  Congress could easily have explicated a fourth option if it had intended to provide a reasonable justification exception to § 109(h)(1) for chapter 11 cases.  It did not do so.  Nor to the extent it is relevant is there any evidence of contrary legislative intent.  It must be inferred that Congress' expression of three exceptions in § 109(h) is exhaustive.  Thus, because Congress clearly expressed exceptions within § 109(h), the Court cannot introduce § 1112(b)(2)(B) as an exception to the mandate of § 109(h)(1).

> **B. Section 109(h) and § 1112(b) are not so related that they should be construed as one law such that § 1112(b)(2)(B) can be construed as an exception to § 109(h)(1).**

Even when a statute lacks an express exception, when another statute pertains to the same subject the two may be *in pari materia* and therefore should be construed together as one law such that the exceptions in one are also exceptions to the other.  See, e.g., Erlenbaugh v. United States, 409 U.S. 239, 243 (1972) (causing scratch sheet to be carried by facility of interstate commerce with intent to facilitate operation of illegal gambling business was violation of statute prohibiting use of any facility in interstate or foreign commerce with

13

intent to further unlawful activity, and exemption for newspaper contained in statute prohibiting interstate transportation of wagering paraphernalia did not apply). The maxim of *in pari materia* presumes that Congress acts with knowledge of all statutes on a particular subject so that a later or simultaneously enacted statute on the same subject should be regarded as an interpretation of the other. See id. at 243-44. This maxim is derived from the principle that all sections of a single statute should be construed together. Id. at 244. In Erlenbaugh, the petitioners argued that an exception to criminal liability for racketeering provided to newspapers under 18 U.S.C. § 1953(b)(3) should also apply to § 1952(a) which had no exceptions. Id. The Supreme Court recognized that although both statutes were enacted simultaneously as part of a broad effort to combat organized crime, they represented different approaches to furthering that end. Id. Section 1953,[8] which

---

[8]Section 1953 provides in relevant part:

(a) Whoever, except a common carrier in the usual course of its business, knowingly carries or sends in interstate or foreign commerce any record, paraphernalia, ticket, certificate, bills, slip, token, paper, writing, or other device used, or to be used, or adapted, devised, or designed for use in (a) bookmaking; or (b) wagering pools with respect to a sporting event; or (c) in a numbers, policy, bolita, or similar game shall be fined under this title or imprisoned for not more than five years or both.

14

contains the exception for newspapers, addresses illegal

gambling specifically, while § 1952[9] applies to the broad range

of unlawful business enterprises of which illegal gambling is

only a part.  Id. at 245-46.  The Court reasoned that it would

defeat the intended broad coverage of § 1952 to introduce §

1953(b)(3) as an exception in the absence of evidence of

legislative intent.  Id. at 247.  The Court also noted that

Congress' intent behind the newspaper exception was to clarify

---

(b) This section shall not apply to...(3) the carriage
or transportation in interstate or foreign commerce of
any newspaper or similar publication...

[9] Section 1952 provides in relevant part:

(a) Whoever travels in interstate or foreign commerce
or uses the mail or any facility in interstate or
foreign commerce, with intent to —

(1) distribute the proceeds of any unlawful activity;
or

(2) commit any crime of violence to further any
unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or
facilitate the promotion, management, establishment,
or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform—

(A) an act described in paragraph (1) or (3) shall be
fined under this title, imprisoned not more than 5
years, or both; or

(B) an act described in paragraph (2) shall be fined
under this title, imprisoned for not more than 20
years, or both, and if death results shall be
imprisoned for any term of years or for life.

15

the scope of specific language in § 1953, which is not present in § 1952, to avoid a potentially overbroad application.  Id. at 247-48.  Consequently, the Court rejected the petitioner's argument that the statutes are *in pari materia*.  Id. at 245. Instead, it held that § 1953(b)(3) cannot be construed as an exception to § 1952(a) because the statutes do not serve the same function and it would defeat the apparent legislative intent.  Id. at 247-48.

Here, Congress added § 109(h) to the Code and amended § 1112(b) as part of BAPCPA.  However, like the two statutes in Erlenbaugh, § 109(h) and § 1112 are different in purpose and scope.  First, although both § 109(h) and § 1112(h) share the remedy of dismissal, they do not share a common purpose in reaching that result.  Noncompliance with § 109(h) must result in dismissal because a case cannot be commenced[10] by an individual who is ineligible to be a debtor.  In contrast, dismissal or conversion under § 1112 occurs to avoid proceeding with a chapter 11 bankruptcy when it has been established that reorganization is unlikely to be successful.  In other words, § 109(h) governs whether an individual is eligible to commence a bankruptcy case and § 1112 governs the appropriate disposition of an existing case.  Although the remedy is common, the

---

[10] Or, alternatively, may not be maintained once it has been commenced.

16

substance is not.

Second, like § 1952 which contemplates a wide range of activities, § 1112 deals with dismissal and conversion for a broad range of situations that qualify as "cause". Given the expansive definition of cause, § 1112(b) operates to permit the court to make exceptions under appropriate circumstances. Conversely, § 109(h) addresses the eligibility requirement of prepetition credit counseling specifically and the specific exceptions thereto. Application of § 1112(b)(2)(B) as an exception to § 109(h)(1) divorces the chapter 11 provision from its context as a modulator for a broad range of causes and places it into a context where cause for dismissal is narrow and precise. This defeats both the purpose of § 1112(b) and the intent behind the exceptions to § 109(h). Therefore, because § 109(h) and § 1112(b) share neither a common function nor scope, the statutes are not *in pari materia* and § 1112(b)(2)(B) cannot be construed as an exception to § 109(h)(1). Thus, the Court need not determine whether Ms. Borges satisfies the § 1112(b)(2)(B) exception.

C. **The increased emphasis on dismissing chapter 11 cases is not consistent with using § 1112(b) as an additional exception to § 109(h).**

Chapter 11 was not enacted solely as a remedial mechanism; rather, it was enacted in order to strike a balance between the dual purposes of rehabilitating the debtor and maximizing the

17

value of the estate.  <u>Toibb v. Radloff</u>, 501 U.S. 157, 163

(1991).  To further this end, § 1112(b) provides courts with a

method to dispose of unworkable chapter 11 cases so creditors

can avoid the "added time and expense of a confirmation hearing

on a plan they believe cannot be effectuated."  <u>In re Woodbrook</u>

<u>Associates</u>, 19 F.3d 312, 316 (7th Cir. 1994).

Under § 1112(b)(1), "a party in interest"[11] may move to

convert or dismiss a chapter 11 bankruptcy case for cause.

Section 1112(b)(4) comprises a non-exhaustive list of the

circumstances which constitute "cause."  <u>In re Orbit Petroleum</u>

395 B.R. 145, 148 (Bankr. D.N.M. 2008)(<u>citing</u> <u>In re Americert,</u>

<u>Inc.</u> 360 B.R. 398, 401 (Bankr. D.N.H. 2007).  If the movant

establishes cause, the court still has some discretion regarding

whether the requested relief will be granted or denied.  <u>See</u> <u>In</u>

<u>re Franmar</u>, 361 B.R. 170, 180 (Bankr. D. Colo. 2006). First,

when cause has been established, the court must grant the

requested relief unless the court identifies unusual

circumstances that would render dismissal or conversion not in

---

[11]Given the Court's disposition of the 109(h) issue, the
Court need not address the question of the Court's authority to
act *sua sponte* pursuant to § 1112(b).  Since the 2005
amendments, some courts hold that § 105(a) provides them the
authority to dismiss for cause despite the 2005 amendment's
limitation on who may request dismissal or conversion.  <u>See,</u>
<u>e.g.</u>, <u>In re Starmark</u>, 388 B.R. 730, 735-36 (Bankr. S.D. Tex.
2008) (holding that a court has authority under § 105(a) to act
*sua sponte* even after the 2005 amendments to § 1112(b)).  In
this case, the Court is not acting pursuant to § 1112(b).

18

the best interest of creditors. § 1112(b)(1) (the "unusual

circumstances exception"); see Orbit Petroleum, 395 B.R. at 149

(finding that debtors' chapter 11 plan that proposed to pay all

creditors in full on its effective date constituted a

sufficiently unusual circumstance upon which to base denial of

conversion or dismissal of debtors' case under § 1112(b)(1)).

Additionally, under § 1112(b)(2) a court must not dismiss or

convert if the debtor or another party in interest objects and

establishes that there is a reasonable likelihood that a plan

will timely be confirmed and basis for the dismissal or

conversion includes an act or omission by the debtor for which

there is a reasonable justification and which will be cured

within a reasonable period of time. §§ 1112(b)(2)(A)-(B) ("the

reasonable justification exception"). This discretion empowers

the court to make exceptions where, under the circumstances of a

particular case, continuing with reorganization can be

justified. 7 Collier on Bankruptcy ¶ 1112.04[5][b] (Alan N.

Resnick & Henry J. Sommer eds., 16th ed. 2009).

The court's discretion under § 1112(b) is now more limited

as a result of restrictions imposed by BAPCPA's amendments to §

1112(b). Pre-BAPCPA, § 1112(b) provided that the court "may"

dismiss or convert a chapter 11 case for cause, consistent with

congressional intent to empower courts with "wide discretion" to

determine an appropriate disposition. See S. Rep. No. 95-989,

19

at 115 (1978). With the passage of BAPCPA, Congress curtailed the court's discretion so that a court "shall" dismiss or convert a chapter 11 bankruptcy upon showing cause, unless the unusual circumstances or reasonable justification exceptions apply. In re Modanlo, 413 B.R. 262, 270 (Bankr. D. Md. 2009). Moreover, BAPCPA also expanded the list of circumstances that constitute "cause" for dismissal or conversion from ten to sixteen non-exclusive grounds. In re Strug-Lawrence, LLC, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007). In light of these amendments, the current iteration of § 1112(b) evinces congressional intent to "circumscribe the Court's discretionary authority in dismissing chapter 11 cases, and to 'mandate' the dismissal or conversion of chapter 11 cases more often." Modanlo, 413 B.R. at 270. The current § 1112(b) does not, therefore, illustrate congressional intent to provide more room for chapter 11 debtors to circumvent dismissal or conversion; instead, the amendments indicate the intent to do just the opposite. Thus, while the policies of reorganization and repayment of creditors undoubtedly continue at the heart of the court's discretion under § 1112(b) to permit continued reorganization in spite of cause for dismissal, Congress' specifically designated exceptions within § 109(h) and the purpose and scope of § 1112(b)(2)(B) bar the Court from applying § 1112(b)(2)(B) as an additional exception to the credit

20

counseling requirement.

**D. Section 1112(b) not only fails to provide the Court with grounds to not dismiss a chapter 11 bankruptcy for failure to obtain credit counseling, but in fact supports the remedy of mandatory dismissal for noncompliance with § 109(h).**

Just as the purpose of chapter 11 and § 1112(b) have no impact on the exclusive list of exceptions to § 109(h)(1), they also do not undermine the conclusion that dismissal is required when a debtor does not satisfy the requirements of § 109(h). In fact, despite the absence an explicitly stated remedy for noncompliance within § 109(h), § 1112(b) reinforces the conclusion that dismissal is the appropriate remedy. Many courts find support for mandatory dismissal for noncompliance with § 109(h) through an examination of how ineligibility is treated under other sections of the Code. See In re Gossett, 369 B.R. 361, 372-73 (Bankr. N.D. Ill. 2007); In re Canon, 388 B.R. 847, 848 (Bankr. M.D. Tenn. 2006); Seaman, 340 B.R. at 707. In Seaman, for example, the court observed that ineligibility constitutes cause for dismissal under §§ 707(a), 1307(c), and 1112(b), all of which provide non-exclusive grounds for dismissal. 340 B.R. at 708. Because dismissal is a remedy for ineligibility elsewhere in the Code, the court determined that it would be consistent to hold that dismissal is the proper disposition of a case where an individual is ineligible to be a debtor due to failure to comply with credit counseling. Id. In

21

contrast, courts that decline to hold that §§ 707(a) and 1307(c) support mandatory dismissal reason that because both statutes specifically enumerate noncompliance with §§ 521(a)(1) and (2) as cause for dismissal but do not similarly refer to the § 521(b) credit counseling certification requirement, ineligibility for failure to obtain credit counseling is not definitive cause for dismissal.  See In re Elmendorf, 345 B.R. 486, 502-03 (Bankr. S.D.N.Y. 2006).  However, unlike §§ 707(a) and 1307(c), § 1112(b)(4)(F) takes a broader approach as it provides that failure to timely satisfy any filing requirement established by Title 11 or rules applicable to chapter 11 cases constitutes cause for dismissal.  Given this expansive approach, cause for dismissal or conversion under § 1112(b)(4)(F) easily encompasses the credit counseling requirement.  Thus, independently and along with similar provisions in the Code, § 1112(b) reinforces the conclusion that a bankruptcy must be dismissed when an individual is ineligibile to be a debtor due to noncompliance with § 109(h)(1).

**E. A chapter 11 bankruptcy must be dismissed when an individual neither timely complies with the credit counseling requirement nor qualifies for the exceptions provided in §§ 109(h)(2), 109(h)(3), or 109(h)(4).**

It is undisputed that Ms. Borges did not obtain credit counseling prior to the filing of the petition.  Since this Court neither has the authority to imply additional exceptions

22

to the credit counseling requirement nor permit the case to proceed absent compliance, the only remaining issue is whether Ms. Borges satisfies any of the exceptions to the credit counseling requirement set forth in § 109(h). First, there has been no determination pursuant to § 109(h)(2) that approved credit counseling agencies were not reasonably able to provide services to Ms. Borges. See U.S. Trustee Program, Approved Credit Counseling Agencies, District of New Mexico, http://www.justice.gov/ust/eo/bapcpa/ccde/CC_Files/CC_Approved_Agencies_HTML/cc_new_mexico/cc_new_mexico.htm (last visited Aug. 10, 2010). Second, to qualify for a temporary exception under § 109(h)(3) the debtor must file a certification that "(1) describes exigent circumstances that merit a waiver of the [credit counseling requirement]; (2) states that the debtor requested credit counseling from an approved nonprofit budget and credit counseling agency, but was unable to obtain [credit counseling services] during the 7-day period beginning on the date within which the debtor made the request; and (3) is satisfactory to the court." §§ 109(h)(3)(A)(i)-(iii). Although the Court recognizes that Ms. Borges experienced significant obstacles stemming from her husband's illness, these circumstances are not alone sufficient to obtain a temporary exemption. Even if the Court was satisfied that the significant responsibilities she assumed as a result of her husband's

23

illness fall within the ambit of "exigent circumstances," Ms. Borges has not provided any evidence that she requested but was unable to obtain credit counseling from an approved credit counseling agency within seven days of the request. Finally, Ms. Borges neither claims nor do the facts establish she is eligible for a waiver of the credit counseling requirement because of incapacity, disability, or active military service pursuant to § 109(h)(4). Thus, because Ms. Borges did not comply with § 109(h)(1) nor qualify for one of the specifically designated exceptions, she is ineligible to be a debtor and the case must be dismissed as to Maria Rocha Borges.

## V. Conclusion

For the forgoing reasons, this Court finds that (1) the exceptions to the credit counseling requirement are limited to those specifically set forth in § 109(h); (2) the Court's discretion, such as it is, to not dismiss a chapter 11 case does not extend to denying § 109 dismissals; and (3) the dismissal provision in § 1112(b) does not dictate a different result. Ms. Borges must be dismissed from the joint chapter 11 case because she did not obtain credit counseling prior to the filing of the petition nor did she establish that she qualifies for any of the three exceptions enumerated in § 109(h).[12] The Court will enter

---

[12]The dismissal will be without prejudice to the filing of another chapter 11 petition for Ms. Borges alone and possible

24

a separate Order (1) dismissing the chapter 11 case as to Maria
Rocha Borges only and denying Debtors' Motion to Permit a
Showing of Reasonable Justification Pursuant to § 1112(b)(2)(B)
and (2) setting aside the Order to Show Cause as to Joe
Bettencourt Borges and granting Debtors' Motion for Waiver of
Credit Counseling Requirement Pursuant to 11 U.S.C. § 109(h)(4).


Honorable James S. Starzynski
United States Bankruptcy Judge

Entered on Docket Date:  September 8, 2010

COPY TO:

Wiley F. James, III
James & Haugland, PC
PO Box 1770
El Paso, TX 79949

Michael K Daniels
PO Box 1640
Albuquerque, NM 87103-1640

Leonard K Martinez-Metzgar
PO Box 608
Albuquerque, NM 87103-0608

---

consolidation or joint administration with this case.  When a
case must be dismissed due to ineligibility under § 109(h)
without a satisfactory explanation from counsel, it is the
policy of this Court to require counsel to refund the filing fee
to the debtor, and then provide assistance with refiling if
requested, represent the debtor in connection with any necessary
stay motion under §§ 362(c)(3) or (4) and, in this instance,
obtain consolidation or joint administration, all free of
charge.

25